PENN–AMERICA INSURANCE COMPANY, Appellant

v.

PECCADILLOS, INC., David M. Freeman, Loretta J. Swartwood, Administratrix of the Estate of Heidi Marie Britton Spicer, Michael J. Wright, Parent and Natural Guardian of Haley Morgan Wright, a Minor, Terry I. Soliwoda, Grandparent and Natural Guardian of Madison Paige Wander, a Minor, James R. Watson, Administrator of the Estate of Megan Ann Watson, Phillip L. Clark, Jr., Administrator of the Estate of Jacob Charles Latta, Appellees.

Superior Court of Pennsylvania.

Argued June 7, 2011.

Filed Aug. 19, 2011.

Gale White, Philadelphia, for appellant.

Mark J. Homyak, Pittsburgh, for Soliwoda and Wright, appellees.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., MUSMANNO, BENDER, GANTMAN, DONOHUE, ALLEN, LAZARUS, and OLSON, JJ.

OPINION BY BENDER, J.:

In this declaratory judgment action, Penn–America Insurance Company (Penn–America) appeals from the order granting summary judgment in favor of Peccadillos, Inc., and its proprietor, David M. Freeman (collectively "Peccadillos"), and denying Penn–America's cross motion for summary judgment. Penn–America contends that the trial court erred in finding that provisions of the company's general commercial liability policy of insurance compel its defense of claims against Peccadillos arising from a fatal car crash caused by two patrons that Peccadillos had ejected from its premises in a dangerously inebriated condition. Penn–America argues that the claims are not subject to coverage due to the liquor liability exclusion of the policy and that, consequently, it has no duty to tender Peccadillos' defense. We conclude that at least one averment of the complaint invokes the policy's duty to defend and, therefore, is not excluded from coverage. Accordingly, we affirm the trial court's order granting summary judgment in fa-

vor of Peccadillos and Freeman and against Penn–America.

In September 2007, the plaintiffs in the underlying tort action filed a complaint naming as defendants Peccadillos, Inc. and Phillip L. Clark, Jr., Administrator of the Estate of Jacob Charles Latta, deceased ("Latta Estate").[1] The complaint averred, in pertinent part, as follows:

7. On March 17, 2006, [Jacob] Latta [("Latta")], then aged twenty-two, accompanied by his friend, Matthew James Maisner ("Maisner"), then aged twenty-two, were in the City of Erie on St. Patrick's Day.

8. Latta and Maisner determined to "celebrate" St. Patrick's Day by visiting a series of bars where both of them drank excessive amounts of alcohol, causing them to be significantly and visibly intoxicated.

9. In the late afternoon and/or early evening of that day, Latta and Maisner were patrons of Peccadillos, where they continued to purchase and consume additional alcohol, although both were visibly intoxicated, and Peccadillos' agents served the alcohol to Latta and Maisner in that condition.

10. Latta and Maisner continued to become even more intoxicated and rowdy, including a physical altercation with another Peccadillos patron.

11. Latta and Maisner were then required to leave Peccadillos' premises by Peccadillos' agents, when it was apparent that neither of them was in a safe condition to operate a motor vehicle.

12. Upon leaving Peccadillos, at approximately 9:00 p.m., Latta drove his 2004 Dodge Stratus, with Maisner as his passenger, on State Route 97 (["]Perry Highway["]) southbound in Summit Township, Erie County, Pennsylvania, while extremely intoxicated.

13. At that location, Perry Highway is a two lane black asphalt highway with asphalt berms, with one lane of travel in each direction.

14. At that time, the weather was clear and cold and the pavement was dry.

15. At that same time, date and place, … Heidi Marie Britton Spicer[ ] was operating her 1990 Buick Skylark in a safe and normal fashion northbound on Perry Highway.

16. [ ] Heidi Marie Britton Spicer was accompanied by … Megan Ann Watson, in the right front passenger seat, and Heidi's two minor daughters, [ ] Hayley Morgan Wright and [ ] Madison Paige Wander, with [ ] Hayley being seated in the left rear passenger seat, and [ ] Madison seated in the right rear passenger seat.

17. At that same time, date and place, [ ] Latta, traveling at an extraordinarily high rate of speed greatly in excess of the speed limit, attempted to pass another southbound vehicle that had stopped to make a signaled left hand turn, by making an illegal pass off of the traveled surface of the roadway on the right, lost control of his vehicle, and crossed over the southbound lane and into the northbound lane, causing his vehicle to violently collide with the Spicer vehicle.

18. As a result of the collision, Latta, Maisner, Heidi Spicer and Megan Ann

---

1. The plaintiffs in the underlying action are designated as follows: Loretta J. Swartwood, Administratrix of the Estate of Heidi Marie Britton Spicer, deceased; Michael J. Wright, parent and natural guardian of Hayley Morgan Wright, a minor; Terry I. Soliwoda, grandparent and guardian of Madison Paige Wander, a minor; and James R. Watson, Administrator of the Estate of Megan Ann Watson, aka Megan A. Watson, deceased (collectively referred to as "Plaintiffs").

Watson, all suffered fatal injuries, resulting in their deaths on said date.

19. Both minor[s] ... witnessed the collision and fatal injuries of their Mother and the injuries of each other.

Action for Complaint in Declaratory Judgment, 05/28/08, Exhibit 1, at ¶¶ 7–19. The complaint also contained the following allegation, on the basis of which Peccadillos asserts it right to defense under the policy:

47. The above described collisions and Plaintiff's resultant injuries and damages as aforesaid, were caused by the reckless and/or negligent, grossly negligent, willful and/or wanton actions and/or inactions of Defendant Peccadillos of continuing to serve alcoholic beverages to the intoxicated Defendant Latta in violation of 47 P.S. § 4–493(1), thereby rendering him incapable of safely operating his vehicle, *and by ejecting Latta from the premises after the physical altercation rather than by taking him in charge or summoning the police when Defendant Peccadillos knew or should have known that Defendant Latta would attempt to operate a motor vehicle in his unsafe, extremely intoxicated condition.*

*Id.* at ¶ 47 (emphasis added).

Responding to Peccadillos' demand for defense under Penn–America's general commercial liability policy, Penn–America filed a complaint in declaratory judgment. The complaint named the following parties as defendants: Peccadillos, Plaintiffs, the Latta Estate, and David Freeman (collectively referred to as "Defendants"). Penn–America's complaint paraphrased elements of Plaintiffs' complaint in the underlying action and further stated that Plaintiffs filed a writ of summons against Freeman. Penn–America also averred that Peccadillos had tendered Plaintiffs' suit to Penn–America for defense and indemnity, and acknowledged that it had denied liability coverage based upon its policy's liquor liability exclusion. Further, Penn–America sought a declaration from the trial court that it is not required to defend the underlying action.

■ Following multiple depositions, Penn–America filed a motion for summary judgment repeating its assertion that the language of its liquor liability exclusion precluded coverage under the policy and negated its duty to defend. Peccadillos and Freeman responded by filing what they styled as a motion for partial summary judgment seeking a contrary determination. Following oral argument, on May 8, 2009, the trial court entered an order denying Penn–America's motion for summary judgment and granting Peccadillos' and Freeman's motion for summary judgment. Penn–America filed its notice of appeal [2,3] following which the matter proceeded to a three-judge panel of this Court. In an Opinion issued July 22, 2010, two members of the panel joined in affirming the trial court's order, while a third judge dissented. Largely adopting the ra-

---

2. Because the trial court's order declared the rights of the parties and disposed of all of the claims made by Penn–America in its complaint for declaratory judgment, the order was immediately appealable. *See Cresswell v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 820 A.2d 172, 181 (Pa.Super.2003) ("In *Nationwide Mutual Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000), our Supreme Court held that an order in a declaratory judgment action that declares the rights and duties of a party constitutes a final order that is final and immediately appealable.").

3. The trial court directed Penn–America to comply with Pa.R.A.P. 1925(b), which it did. Although the trial court later issued a memorandum declaring that it had placed its reasoning on the record in its May 8, 2009 order, this order contains no explanation for the trial court's decision.

tionale of the Dissent, Penn–America sought reconsideration before this Court, *en banc,* and raised the following questions in its substituted brief on appeal:

1. Whether the court below erred in denying summary judgment to Penn–America finding that it had no duty to defend the claims in the underlying lawsuit[?]

2. Whether the court below erred in granting summary judgment to Peccadillos finding that Penn–America had a duty to defend the suit [captioned] *Swartwood, et al. v. Clark, et al.,* Docket No. 14036–2007 (C.P.Erie) against Peccadillos where the claims in that suit are excluded from coverage by the Liquor Liability exclusion in the policy[?]

3. Whether the court below erred in finding a duty to defend based solely on extraneous allegations of negligence that could not form the basis of a claim against Peccadillos[?]

4. Whether, under Pennsylvania law, a claim even exists under Restatement (Second) of Torts Section 319 outside of liquor liability to impose liability on a bar owner for failing to control the conduct of a patron after the patron has left the bar and injured non-patrons offsite[?]

Brief for Appellant at 3.

In support of its first two questions, Penn–America contends that the trial court erred by denying its motion for summary judgment and granting summary judgment in favor of Peccadillos and Freeman.

The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be estab-lished by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. . . .

*Swords v. Harleysville Insurance Companies,* 584 Pa. 382, 883 A.2d 562, 566–67 (2005) (citations omitted).

In this instance, the court entered summary judgment on the basis of its interpretation of Penn–America's contract of insurance. "The interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" *Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290–91 (2007) (citations omitted).

Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in insured's favor.

*American and Foreign Ins. Co. v. Jerry's Sport Center, Inc. (Jerry's Sport Center II),* 606 Pa.584, 2 A.3d 526, 540 (2010). *See also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins.*

*Co.,* 589 Pa. 317, 908 A.2d 888, 893 (2006) ("When the language of the policy is clear and unambiguous, we must give effect to that language. [However,] when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.").

"An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions." *Erie Insurance Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348, 355 (1996) (en banc). "In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend." *Id.* As this Court has summarized:

The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy.

*American and Foreign Ins. Co. v. Jerry's Sport Center, Inc. (Jerry's Sport Center I),* 948 A.2d 834, 845–846 (Pa.Super.2008) (quoting *Wilcha v. Nationwide Mut. Fire Ins. Co.,* 887 A.2d 1254, 1258 (Pa.Super.2005) (emphasis added)). *See also Jerry's Sport Center II,* 2 A.3d at 540 ("Indeed, the duty to defend is not limited to meritorious actions; it even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage.").

 Pennsylvania recognizes that "a duty to defend is broader than the duty to indemnify." *Kvaerner Metals,* 908 A.2d at 896 n. 7. "Accordingly, even 'if there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy.'" *Jerry's Sport Center I,* 948 A.2d at 846 (quoting *Sclabassi v. Nationwide Mut. Fire Ins. Co.,* 789 A.2d 699, 703 n. 2 (Pa.Super.2001)). *See also Jerry's Sport Center II,* 2 A.3d at 541 ("As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend.")

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. *See [Baumhammers* ], 595 Pa. 147, 938 A.2d 286, 290 (2007) ("The language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation."). An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.

*Id.* at 541. Significantly, "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Id.* (quoting *Springfield Tp. et al. v. Indemnity Ins. Co. of North America,* 361 Pa. 461, 64 A.2d 761 (1949)). In making this determination, the "factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Id.* (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.,* 193 F.3d 742 (3d Cir.1999)).

■ Penn–America argues that the allegations leveled against Peccadillos in Plaintiffs' complaint fall squarely within the Policy's liquor liability exclusion. The following excerpt from Penn–America's brief states its position comprehensively:

All of the allegations of the Underlying Complaint fall within the Liquor Liability Exclusion and the Panel majority did not dispute this—except for a single phrase in a single paragraph of a Liquor Liability count. The Panel Majority isolated and cited the following from the Complaint to find a duty to defend:

The above described collisions and [Plaintiffs'] resultant injuries and damages as aforesaid, were caused by the reckless and/or negligent, grossly negligent, willful and/or wanton actions and/or inactions of [ ] Peccadillos of continuing to serve alcoholic beverages to the intoxicated [ ] Latta in violation of 47 P.S. § 4–493(1), thereby rendering him incapable of safely operating his vehicle, and **by ejecting Latta from the premises after the physical altercation rather than by taking him in charge or summoning the police when Defendant Peccadillos knew or should have known that Defendant Latta would attempt to operate a motor vehicle in his unsafe, extremely intoxicated condition.**

Majority Opinion at 10–11, ¶ 14; quoting from Paragraph 47 of the Complaint (emphasis in original).

As the Dissent stated, the averments of the paragraph cited by the Panel Majority "must be read together and that they were so intended." Dissenting Opinion at 18, ¶ 3. The Dissent continued to explain that the thrust of Paragraph 47, when read in its entirety, is that the accident was caused or contributed to by Peccadillo's continued service of alcohol to the visibly intoxicated Latta, and then ejecting him, knowing he would operate a motor vehicle. Accordingly[,] ... Plaintiffs['] injuries were at the very least "contributed to" by the service of alcohol. ... Because the injuries were contributed to by the intoxication of Mr. Latta, such injuries are excluded from coverage by the Liquor Liability Exclusion which precluded coverage for injuries for which the insured may be held liable by reason of "[c]ausing **or contributing** to the intoxication of any person."

Brief for Appellant at 18 (citations omitted). Penn–America asserts accordingly that the declaration of the trial court and the affirmance of the panel majority were more the product of clever pleading than legal analysis:

The Supreme Court instructed in [*Mutual Benefit Ins. Co. v.*] *Haver,* [555 Pa. 534, 725 A.2d 743, 745 (1999) ], "to allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." In the instant case, in focusing on an isolated phrase in the Underlying Complaint, and taking that phrase out of its context, the court below and the Panel Majority have done exactly what the Supreme Court has directed should not be done: ignore the substances of what is actually alleged in the Underlying Complaint and allow artful creation and interpretations to control.

Brief for Appellant at 18.

We find Penn–America's argument tendentious, noteworthy more for its concern with the company's financial interest than its recognition of Pennsylvania law. Paragraph 47 of Plaintiffs' complaint, asserting negligence by Peccadillo's in ejecting Latta from its premises in so inebriated a condi-

tion as to render him a danger behind the wheel of a car, does, if "taken as true and liberally construed in favor of the insured[,]" *id.*, state a claim subject to coverage under Penn America's commercial general liability insurance contract.

The Policy states, in relevant part,

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply....

Action for Complaint in Declaratory Judgment, 05/28/08, Exhibit 3, Commercial General Liability Coverage Form, at Page 1 of 15.

The liquor liability exclusion at issue in this case, upon which Penn–America depends to obviate its duty to tender Peccadillos' defense, provides as follows:

This insurance does not apply to:

\* \* \* \*

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

*Id.* at Page 2 of 15 (hereafter, "Liquor Liability Exclusion").

■■■ Penn–America's policy is structured such that the scope of coverage is delineated by the "Insuring Agreement" quoted above, subject to policy limitations or exclusions the insurer may assert as an affirmative defense. *See Bishops, Inc. v. Penn National Ins. Co.*, 984 A.2d 982, 991 (Pa.Super.2009). The "Insuring Agreement['s]" Paragraph 1.a., clearly recognizes the duty, and asserts the right[4] to defend "any 'suit'" seeking damages for bodily injury "to which this insurance applies." Action for Complaint in Declaratory Judgment, 05/28/08, Exhibit 3, Commercial General Liability Coverage Form, at Page 1 of 15. In the context of this dispute, Penn–America may escape its coverage obligation only to the extent that it can demonstrate the unambiguous mandate of the liquor liability exclusion. *See Bishops, Inc.*, 984 A.2d at 991. Further, its obligation to defend remains unless that exclusion clearly defeats every cause of action averred in the underlying complaint. In this regard, it fails outright. Although the liquor liability exclusion clearly excludes liability based on Peccadillos' hav-

---

4. As we noted in *Jerry's Sport I*, the insurer's exercise of its right to defend allows it to "control the defense and ... take actions to mitigate any future indemnification responsibilities" *See* 948 A.2d at 848. By exercising that right, the insurer "avoid[s] the risks that an inept or lackadaisical defense of the underlying action may expose it to" in the event it is later compelled to indemnify the insured. *Id.* (quoting *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219–20 (3rd Cir. 1989)). Penn–America did exercise that right here in providing a defense through the summary judgment stage of the proceeding and, presumably, has realized the corresponding benefit.

ing "caused or contributed to the intoxication" of the now-deceased Latta, it does not limit, in any way, liability that may be assessed for other reasons.

As Peccadillos advocates, and the trial court apparently recognized, the claim of Plaintiffs' complaint, paragraph 47, is not based on whether Peccadillos caused or contributed to Latta's intoxication. Instead, it premises liability on Peccadillos' ejection from its premises of two sorely intoxicated patrons, whose brawling in the bar had revealed their lack of impulse control, and whose inability to control a deathly instrumentality like an automobile was readily apparent. Peccadillos failed to summon the police, who would most certainly have not allowed either of the men to drive, and failed to exercise any discretion, absent police authority, to see that they did not drive, such as arranging alternative transportation. These allegations neither assert nor rely on Peccadillos' violation of the Liquor Code or any statute, nor do they arise directly from Peccadillos' provision of liquor or contribution to the men's intoxicated condition. *See* Liquor Liability Exclusion. Indeed, the plaintiffs could aver the same facts even had the two men merely entered Peccadillos' drunk and engaged in the conduct that prompted their ejection, regardless of whether Peccadillos' provision of alcohol had actually contributed to the men's intoxication or prompted their behavior. Instead, Plaintiffs' averments suggest a set of duties germane to Peccadillos' obligation to control the conduct of third persons. *See*

RESTATEMENT (SECOND) TORTS, §§ 315–319. We conclude accordingly that the allegations of Plaintiffs' complaint at issue in Paragraph 47 are not subject to the liquor liability exclusion in Penn–America's policy. Consequently, Penn–America is not relieved of its right and duty to tender a defense under the policy and the trial court did not err in so finding. *See Biborosch v. Transamerica Ins. Co.*, 412 Pa.Super. 505, 603 A.2d 1050, 1057–58 (1992) ("[I]n order to find a duty to defend, we need not find that every claim asserted in the complaint filed against the insured is within the potential coverage of the policy. Rather we need only determine if any of the claims asserted are potentially covered. If any are, the insurer must defend until the suit is narrowed only to claims that are definitely not within that coverage.").

■ In support of its fourth question,[5] Penn–America asserts that imposition of a duty upon tavern owners to control the conduct of third persons pursuant to Restatement section 319 is contrary to provisions of the Pennsylvania Liquor Code as well as Pennsylvania's decisional law. Brief for Appellant at 24. Nevertheless, we note, upon review of the record, that that issue, more properly addressed as grounds for the insurer's duty to indemnify (rather than to provide a defense), was not argued in Penn–America's motion for summary judgment and mentioned only in the most cursory way at oral argument

---

5. Penn–America's third question, "Whether the court below erred in finding a duty to defend based solely on extraneous allegations of negligence that could not form the basis of a claim against Peccadillos[,]" is not supported by corresponding discussion in the body of Penn–America's brief. Accordingly, we find it waived. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and

shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). *See also Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1381 (1995) (deeming appellant's question waived upon failure to provide corresponding analysis in the body of its brief).

before the trial court. N.T., Summary Judgment, 3/13/09, at 8–9, 13.

Moreover, it does not appear to be a necessary element of a declaratory judgment analysis on this issue of the duty to defend which, as we have noted, must be determined by comparison of the four corners of the underlying complaint and the provisions of the contract of insurance at issue. *See Jerry's Sport Center II,* 2 A.3d at 541. To the extent that a duty to defend is apparent, the insurer must execute that duty regardless of the merits of the underlying claim and even if it proves to be "groundless, false, or fraudulent." *See id.* ("Indeed, the duty to defend is not limited to meritorious actions; it even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage.").

■ As we observed, *supra,* Pennsylvania recognizes that "a duty to defend is broader than the duty to indemnify." *Kvaerner Metals,* 908 A.2d at 896 n. 7. We have determined that Penn–America has a duty to defend based on its contract of insurance interpreted with reference to the allegations of the underlying complaint. This determination carries with it a *conditional* obligation to indemnify in the event the fact finder imposes liability for a claim covered by the policy. *See General Acc. Ins. Co. of America v. Allen,* 547 Pa. 693, 692 A.2d 1089, 1095 (1997) ("The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy."). The trial court could not, and seemingly did not, conclude that Penn–America has a duty to indemnify, regardless of the outcome of Plaintiffs' action. Consequently, the matter of indemnification pursuant to whatever duties may be imposed by Restatement section 319 is not properly before us on this appeal and

offers no basis for relief. We conclude accordingly that Penn–America's fourth question is without merit.

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of Peccadillos and Plaintiffs and against Penn–America.

Order **AFFIRMED.**

Judge GANTMAN notes her dissent.