J-A22018-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH R. WILTON, JOHN P. BRANDT, | : | No. 325 MDA 2021 |
| O.D., KAREN BRANDT, MASTER | : | |
| FORCE CONSTRUCTION CORP., | : | |
| ROBERT DEHARDER, WE DO METAL | : | |
| ROOFS.COM, WE DO METAL ROOFS, | : | |
| AND FOX HOME IMPROVEMENT | : | |
| NETWORK CORP. | : | |

Appeal from the Order Entered February 9, 2021
In the Court of Common Pleas of Clinton County Civil Division at No(s):
2018-01273

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                **FILED: FEBRUARY 9, 2022**

Appellant, Erie Insurance Exchange, appeals from the February 9, 2021

order granting summary judgment in favor of John P. Brandt, O.D. and Karen

Brandt (collectively "Brandt") in the amount of $417,807.35 and denying

Appellant's motion for summary judgment.[1]  We vacate the order, deny

---

[1] An order granting summary judgment that disposes of all claims and all parties is a final and appealable order. ***Mae v. Janczak***, 245 A.3d 1134, 1135 n.1 (Pa. Super. 2021); ***see also*** Pa.R.A.P. 341(b)(1) (defining a final order as an order that, *inter alia*, "disposes of all claims and of all parties").  Here, because the February 9, 2021 order granting summary judgment in favor of Brandt disposes of all claims and all parties, this appeal properly lies from said order.  ***Mae***, 245 A.3d at 1135 n.1.

Brandt's motion to dismiss or quash the appeal, and remand this case with instruction in accordance with this memorandum.[2]

---

[2] On August 19, 2021, Brandt filed a motion with this Court seeking to dismiss or quash the instant appeal pursuant to Pa.R.A.P. 1972(a) . Brandt asserts that "[t]he instant appeal should be dismissed because Appellant waived its right to appeal by willfully failing to appear for oral argument [on its motion for summary judgment and Brandt's counter-motion for summary judgment.]" Moton to Dismiss or Quash, 8/19/21, at ¶22. Brandt argues that "Appellant's failure to appear and answer the trial court's questions deprived the trial court of the opportunity to avoid the alleged errors of which Appellant now complains." *Id.* at ¶24. Brandt further asserts that the instant appeal should be dismissed or quashed because Appellant failed to preserve the issue of the trial court proceeding with oral argument in Appellant's absence in its Rule 1925(b) concise statement. *Id.* at ¶26.

Appellant filed a response to Brandt's motion to dismiss or quash the instant appeal with this Court on September 2, 2021. In its response, Appellant asserts, *inter alia*, that it never received notice of the hearing, that its absence from the hearing was inadvertent, that it provided memorandums in advance of the hearing that set forth its argument in support of its motion for summary judgment and in opposition to Brant's counter-motion for summary judgment, and that the trial court was able to dispose of the motions for summary judgment on the merits. Appellant's Answer in Opposition, 9/2/21, at ¶11-12; *see also* Appellant's Brief in Opposition, 9/2/21, at 6-17.

A review of the record demonstrates that on December 15, 2020, the trial court issued an order scheduling oral argument on the competing motions for summary judgment for February 2, 2021. *See* Trial Court Order, 12/15/20. Oral argument was held *via* advanced communication technology due to the COVID-19 global pandemic. The notes of testimony demonstrate that counsel for Appellant failed to appear at the hearing, and the trial court was unable to contact counsel using the information previously provided. N.T., 2/2/21, at 2-3. At the hearing, counsel for Brandt did not object to the absence of Appellant's counsel, nor did Brandt's counsel orally move for summary judgment on the ground Appellant's counsel failed to attend the hearing. *See id.* at 1-10. Instead, despite counsel's failure to appear, the trial court proceeded with the hearing and, ultimately, granted summary judgment on the merits in favor of Brandt and denied, on the merits, Appellant's motion for summary judgment.

_____

We find that Brandt failed to raise the issue of Appellant's failure to attend the hearing on the competing motions for summary judgment before the trial court and, therefore, cannot raise this issue on appeal. *See* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Moreover, as a general rule, the trial court has the discretion to dispose of a motion for summary judgment based upon its review of the record, and the trial court is not required to conduct oral argument before disposing of said motion. ***GMAC Mortgage Corp. of PA v. Buchanan***, 929 A.2d 1164, 1169 (Pa. Super. 2007). While the Pennsylvania Rules of Civil Procedure governing motions for summary judgment require the non-moving party to file a response, ***see*** Pa.R.Civ.P. 1035.3(a), we find no such rule which mandates that the non-moving party attend argument on the motion, if the trial court elects to hold such a proceeding. ***See***, ***generally***, Pa.R.Civ.P. 1035.1 to 1035.5. Although we do not condone a party's decision to forgo attendance at a judicial proceeding when the trial court, in its discretion, believes such a proceeding is necessary, we find that a party satisfies the requirements governing summary judgment if the party files a response to the motion for summary judgment. In the case *sub judice*, rather than find that Appellant waived its own request for summary judgment and grant summary judgment in favor of Brandt solely on the basis of Appellant's failure to attend the oral argument, the trial court disposed of the competing motions for summary judgment on the merits. Therefore, it may be inferred that the trial court decided that the competing motions could be disposed of based, in part, upon a review of the record and without oral argument by Appellant.

Finally, a review of the trial court docket demonstrates a breakdown in court operations. Pennsylvania Rule of Civil Procedure 236 requires a prothonotary to give written notice to each party of the entry of any trial court order or judgment. ***See*** Pa.R.Civ.P. 236(a). Rule 236(b) required a prothonotary to "note in the docket the giving of the notice[.]" ***See*** Pa.R.Civ.P. 236(b). A review of the trial court docket entry pertaining to the December 15, 2020 scheduling order demonstrates that the prothonotary reproduced the complete text of the scheduling order, including the trial court's notation that carbon copies of the scheduling order were sent to counsel for all parties, as well as the court administrator, in the trial court docket entry. ***See*** Trial Court Docket Entry, 12/15/20; ***see also Fischer v. UPMC Northwest***, 34 A.3d 115, 121 (Pa. Super. 2011) (holding that, a prothonotary must **specifically** note on the docket the date that Rule 236 notice was given to the appropriate parties (emphasis added)). Conspicuously absent from the trial court docket

The trial court summarized the factual history as follows:

[Appellant] issued a policy of insurance to [Keith R.] Wilton [("Wilton")] known as a FiveStar Contractors Policy ("the policy"). [Appellant] claims that the policy [] does not provide insurance coverage on behalf of [] Wilton on the claims and ultimate [judgment] that [] Brandt obtained in the [underlying] civil action [against, *inter alia*, Wilton.]  In the underlying action, [] Brandt[, as the plaintiff-homeowner,] alleged that [] Wilton [] violated the Pennsylvania Home Improvement Consumer Protection Act [("HICPA"), 73 P.S. §§ 517.1 to 517.19,] and the Unfair Trade Practices [] and Consumer Protection Law [("UTPCPL"), 73 P.S. §§ 201-1 to 201-10.]  Brandt also brought claims of breach of contract, breach of expressed warranty, breach of implied warranty of fitness, and [] negligence[.  The trial c]ourt in the underlying action entered a [non-jury] verdict[, and ultimately a judgment was entered,] in favor of [] Brandt and against[, *inter alia*,] Wilton, to all five [] counts[.  The trial court awarded] treble damages in the amount of [$222,648.15] and attorney's fees in the amount of [$195,159.20.  Thus, the final judgment entered against, *inter alia*, Wilton was $417,807.35.]

Trial Court Opinion, 2/9/21, at 2-3.  This Court affirmed the judgment in the underlying action on April 21, 2020.  ***See Brandt v. Master Force Constr. Corp.***, 236 A.3d 1114 (Pa. Super. Filed April 21, 2020) (unpublished memorandum).  The judgment became final on May 21, 2020, upon expiration of the time in which to file a petition for allowance of appeal with our Supreme Court.  ***See*** Pa.R.A.P. 1113(a) (stating, "a petition for allowance of appeal

_____

entry in the case *sub judice* is a notation on the docket that Rule 236 notice of the trial court's scheduling order was provided to Appellant's counsel and the date said notice was provided.  Anything short of such a notation constitutes a failure by the prothonotary to comply with the notification mandate and procedural requirement of Rule 236 and is a breakdown in court operations.  Therefore, even if Brandt had not waived this issue for failure to raise it at the oral argument before the trial court, we would decline to dismiss the appeal on this basis due to the breakdown in court operations.

- 4 -

shall be filed with the Prothonotary of [our] Supreme Court within 30 days after the entry of the order of [this Court] sought to be reviewed").

On October 8, 2018, and prior to the resolution of the underlying action, Appellant filed a complaint for declaratory judgment asserting that the policy did not provide coverage for Wilton in the underlying action because, *inter alia*, the claims against Wilton were the result of faulty workmanship. Faulty workmanship, according to Appellant, did not constitute an "occurrence," as defined by the policy, which triggered coverage under the policy. Appellant asserted that, because Wilton's actions, and the resulting claims, were not covered by the policy, Appellant was not obligated to defend or indemnify Wilton in the underlying action. **See** Appellant's Complaint, 10/8/18. Ultimately, upon filing of a *praecipe* for entry of a default judgment, a default judgment was entered against Wilton on May 14, 2020.

On October 12, 2020, Appellant filed a motion for summary judgment arguing that, because Wilton's action in the underlying action constituted faulty workmanship and was not an occurrence for which the policy provided coverage, Appellant had no duty to indemnify Wilton in the underlying action. Appellant's Motion for Summary Judgment, 10/12/20. On November 9, 2020, Brandt, as a defending party in Appellant's action for declaratory judgment, filed a response in opposition to Appellant's motion for summary judgment and a counter-motion for summary judgment asserting, *inter alia*, that Appellant was obligated to pay the judgment in the underlying action because the judgment was the result of an "occurrence," thereby requiring coverage,

and the policy did not exclude coverage for violations of HICPA and the UTPCPL. Brandt Counter-Motion for Summary Judgment, 11/9/20, at ¶¶14-15.

On February 2, 2021, the trial court entertained argument on, *inter alia*, Brandt's counter-motion for summary judgment.[3] On February 9, 2021, the trial court concluded that,

> damages to [] Brandt's property were caused by an occurrence insured under the policy [], that the policy [] does not exclude coverage for any damages due to violations of [the] UTPCPL or HICPA, that [the trial] court's verdict in the underlying action was entered to various counts not just the breach of contract claim, and that the public policy of the Commonwealth of Pennsylvania prohibits [Appellant] from avoiding coverage after issuing a policy of insurance to [] Wilton [in order that he could] obtain a license under HICPA.

Trial Court Opinion, 2/9/21, at 17 (extraneous capitalization). Ultimately, the trial court denied Appellant's motion for summary judgment, granted Brandt's counter-motion for summary judgment, and directed that judgment be entered in favor of Brandt and against Appellant. Trial Court Order, 2/9/21. This appeal followed.[4]

Appellant raises the following issues for our review:

---

[3] As discussed more fully *supra*, counsel for Appellant did not participate in the oral argument. **See** N.T., 2/2/21, at 2-3.

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

1.    Did the trial court erroneously rule that Wilton's faulty workmanship and intentional consumer fraud constituted an "occurrence" as defined by the [] policy?

2.    Do the [] policy's exclusions eliminate coverage for Wilton's faulty workmanship and intentional consumer fraud?

3.    Did the trial court erroneously create Pennsylvania public policy that requires [Appellant] to indemnify Wilton for the [Brandts'] claims?

Appellant's Brief at 7.

Appellant's issues, *in toto*, challenge the trial court's order denying Appellant summary judgment and, conversely, granting Brandt summary judgment, for which our standard and scope of review are well-settled.

A reviewing court may disturb the order of the trial court only where it is established that the [trial] court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. [*See*] Pa.R.C[iv].P. 1035.2. [Rule 1035.2] states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne Univ. of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (case citations, ellipses, and quotation marks omitted).

All three of Appellant's issues relate to perceived errors in the trial court's finding that Appellant was required to indemnify Wilton for the judgment entered in favor of Brandt in the underlying cause of action.[5] In its first and second issues, Appellant contends the trial court erred in its interpretation of the policy and, specifically, in finding that Wilton's installation of the roof on Brandt's house constituted an "occurrence," thereby triggering coverage under the policy. Appellant's Brief at 33-53. Even if Wilton's installation met the definition of an "occurrence" under the policy, Appellant contends the trial court erred in determining that the policy's exclusion provisions did not preclude coverage. *Id.* at 53-59.

> Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists it should be resolved in [the] insured's favor.

*Penn-America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 264 (Pa. Super. 2011) (citation omitted) (*en banc*), *appeal denied*, 34 A.3d 832 (Pa. 2011).

---

[5] Appellant does not place at issue in the instant appeal whether it had a duty to defend Wilton in the underlying action because, as Appellant states, "[t]he [underlying] action has since ended, and [Appellant] provided a defense to Wilton to its conclusion." Appellant's Brief at 32 (stating, "[b]ased on these developments, only the duty to indemnify is at issue on appeal"). Therefore, we will not consider, herein, whether Appellant had a duty to defend Wilton in the underlying action. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 n.7 (Pa. 2006) (stating, "the duty to defend is separate from and broader than the duty to indemnify").

"[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." ***Wagner v. Erie Ins. Co.***, 801 A.2d 1226, 1231 (Pa. Super. 2002) (citation omitted), *aff'd*, 847 A.2d 1274 (Pa. 2004).

Here, the policy provided to Wilton, as the insured, by Appellant, as the insurer, states that Appellant "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Policy at § I(1)(a). In order for the policy to provide coverage, the bodily injury or property damage must have, *inter alia*, resulted from an "occurrence." ***Id.*** at § I(1)(b)(1) (stating, the policy "applies to 'bodily injury' and 'property damage' only if [the] 'bodily injury' or 'property damage' is caused by an 'occurrence'"). The policy defines "occurrence" as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Property damage" to "your work" will constitute an "occurrence" if all of the following conditions are met:
>
> > The "property damage" to "your work" is included in the "products-completed operations hazard";
> >
> > The damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor; and
> >
> > The "property damage" is not expected or intended by you or anyone for whom you are legally responsible.

***Id.*** at Amendment of Occurrence Definition for Subcontracted Work. "Property damage" is defined as, *inter alia*, "[p]hysical injury to tangible

property, including all resulting loss of use of that property." *Id.* at § V(17)(a). The policy's definition of "property damage" includes the following statement of exclusion:

> "Property damage" does not include any loss, cost[,] or expense to correct any defective, faulty[,] or incorrect work performed by you or by any contractors or subcontractors working directly or indirectly on your behalf.

*Id.* at Amendment of Occurrence Definition for Subcontracted Work.

The policy excludes coverage for, *inter alia*, "bodily injury" or "property damage" that is "expected or intended from the standpoint of the insured." *Id.* at § I(2)(a). The policy also excludes "property damage" to "[t]hat particular part of any property that must be restored, repaired[,] or replaced because 'your work' was incorrectly performed on it." *Id.* at § I(2)(j). "Your work" is defined as "[w]ork or operations performed by you or on your behalf" and "materials, parts[,] or equipment furnished in connection with such work or operations." *Id.* at § V(22)(a)(1) and (2). "Your work" also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance[,] or use of 'your work'[.]" *Id.* at § V(22)(b)(1).

The policy, however, does not define the term "accident." Nonetheless, Courts have long-held that the term "accident," within the context of an insurance policy "occurrence," is defined as follows:[6]

> "accident" [is] "an unexpected and undesirable event," or "something that occurs unexpectedly or unintentionally." The key term in the ordinary definition of "accident" is "unexpected." This implies a degree of fortuity that is not present in a claim for faulty workmanship.

*Kvaerner*, 908 A.2d at 898 (original brackets omitted) (emphasizing that, "the fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship" (citation and original brackets omitted)); *see also Millers Capital Ins. Co. v. Gambone Brothers Dev. Co. Inc.*, 941 A.2d 706, 713 (Pa. Super. 2007) (stating, "an insurance claim under an occurrence based [] policy that defines the term 'occurrence' as an accident cannot be premised on a claim of faulty workmanship"), *appeal denied*, 963 A.2d 471 (Pa. 2008); *Indalex, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 83 A.3d 418, 422 (Pa. Super. 2013) (stating, "the definition of 'accident' required to establish an 'occurrence' under [an insurance policy] cannot be satisfied by claims based upon faulty workmanship"), *appeal denied*, 99 A.3d 926 (Pa. 2014). Thus, it is well-established that faulty workmanship cannot constitute an "occurrence" thereby triggering coverage under an occurrence-based insurance policy such as the policy in the case *sub*

---

[6] "Words of common usage in an insurance policy are construed according to their natural, plain, and ordinary sense." *Kvaerner*, 908 A.2d at 897.

- 11 -

*judice*. *See **Pennsylvania Mfrs. Indem. Co. v. Pottstown Indus. Complex LP***, 215 A.3d 1010 (Pa. Super. 2019) (stating, "[f]aulty workmanship itself does not constitute an 'occurrence'"). Stated simply, "[i]ntentional acts are not 'occurrences.'" ***Sclabassi v. Nationwide Mut. Fire Insur. Co.***, 789 A.2d 699, 703 (Pa. Super. 2001), *appeal denied*, 797 A.2d 915 (Pa. 2002).

Generally, a declaratory judgment action is filed by an insurer prior to, or during the pendency of, the underlying litigation against an insured, to determine the insurer's duties to defend and to potentially indemnify the insured. Within the procedural posture of a case involving a request for declaratory judgment, the question of whether a claim against an insured is potentially covered by the insurance policy and, thus, requiring the insurer to defend and to potentially indemnify the insured "is answered by comparing the four corners of the insurance contract to the four corners of the complaint" filed in the underlying action. ***Peccadillos***, 27 A.3d at 265. An insurer's duty to defend, and potentially to indemnify the insured, "is not limited to meritorious actions; it even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage." ***Id.*** (citation omitted).

This, however, is not the procedural posture of the case *sub judice.* Here, the underlying action against Wilton has been resolved and resulted in a judgment against, *inter alia*, Wilton. As such, rather than examine the allegations of the complaint in the underlying action to determine the

possibility that coverage is implicated, a trial court, such as in the case here, must examine the factual determinations and legal conclusions that resulted in a judgment against the insured to determine if, in fact, policy coverage has been implicated. **See Regis Insur. Co. v. All Am. Rathskeller, Inc.**, 976 A.2d 1157, 1161 (Pa. Super. 2009) (stating, "[u]nlike the duty to defend, the duty to indemnify cannot be determined merely on the basis of whether the factual allegations of the complaint potentially state a claim against the insured" (citation and original quotation marks omitted)); **see also State Farm Fire and Cas. Co. v. DeCoster**, 67 A.3d 40, 46 (Pa. Super. 2013) (stating, "the duty to indemnify is not necessarily limited to the factual allegations of the underlying complaint[, rather], there must be a determination that the insurer's policy **actually** covers a claimed incident" (original quotation marks omitted, emphasis in original)).

As previously noted by this Court in the underlying action, Brandt brought statutory claims against, *inter alia*, Wilton for violation of HICPA and the UTPCPL, as well as common law claims for breach of express warranty and negligence. **See Brandt**, 236 A.3d 1114, at *2; **see also**, Appellant's Motion for Summary Judgment, 10/12/20, at Exhibit A. In reaching its verdict in the underlying action, the trial court "did not assess any monetary damages against any defendant – including Wilton - for conduct specifically related to [Brandt's] common law claims." **Brandt**, 236 A.3d 1114, at *7; **see also** Trial Court Order, 2/15/19; Trial Court Opinion, 2/15/19. The trial court in the underlying action calculated Brandt's monetary damages "exclusively

- 13 -

within the statutory framework of [] HICPA and the UTPCPL" and "the judgment in favor of [Brant] for damages arose solely from violations of [] HICPA and [the] UTPCPL." **Brandt**, 236 A.3d 1114, at *7; **see also** Trial Court Opinion, 2/15/19, at 12-14. Specifically, the trial court in the underlying action awarded damages in accordance with Section 201-9.2 of the UTPCPL,[7] which provides for the award of, *inter alia*, three times the actual damages sustained, as well as attorney's fees and costs of litigation. **See** 73 P.S. § 201-9.2; **see also** Trial Court Opinion, 2/15/19, at 12-14. Therefore, we confine our examination of whether the policy requires Appellant to indemnify Wilton for the damages awarded as a result of Wilton's violation of HICPA and the UTPCPL.

_____

[7] Section 201-9.2 of the UTPCPL states,

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [73 P.S. § 201-3] of this act, may bring a private action to recover actual damages or one hundred dollars[,] whichever is greater. The [trial] court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars[,] and may provide such additional relief as it deems necessary or proper. The [trial] court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 P.S. § 201-9.2.

- 14 -

In the underlying action, the trial court found, by clear and convincing evidence, that Wilton "was the subcontractor who installed the metal roof furnished by [Master Force Construction Corp.[8]] at [Brandt's] property." Trial Court Opinion, 2/15/19, at ¶15. The trial court further found that Wilton was instructed by, *inter alia*, Master Force Construction Corp. "to conceal [] Wilton's identity as a subcontractor and to allow [Brandt] to believe [] Wilton was employed with [Master Force Construction Corp.]"[9] *Id.* The trial court credited the testimony of Brandt's expert witness in the underlying action, who stated that, "the roof was improperly installed and should have never been installed on [Brandt's house] due to the slope of the roof." *Id.* at ¶29. Specifically, the trial court found, based upon the expert's testimony, that "the roof utilized at [Brandt's] residence was inappropriate, violated [the] manufacturer's recommendations, violated the requirements of the [b]uilding [c]ode in effect, and resulted in damages to [Brandt]." *Id.* at 11. The trial court further found that "Wilton admitted that [he] did not care and did not even consider the manufacturer recommendation concerning [Brandt's] roof." *Id.* The trial court in the underlying action stated, "Wilton performed **inferior**

---

[8] Master Force Construction Corp. d/b/a/ We Do Metal Roofs.com, through its agent, entered into a contract with Brandt to replace the roof on Brandt's residence with a metal roof and to install a seamless gutter system. Trial Court Opinion, 2/15/19, at 1, 4.

[9] In order for a home improvement contract to be valid and enforceable, Section 517.7(a)(10) of HICPA requires the names, addresses, and telephone numbers of all subcontractors to be disclosed to the homeowner in the contract. *See* 73 P.S. § 517.7(a)(10).

**work** as evidenced by the [expert's testimony]" and he "participated in the charade regarding the true position of [] Wilton in this arrangement as the subcontractor." **Id.** at 11-12 (emphasis added). The trial court concluded that Wilton violated the UTPCPL by constructing a roof that was "inferior to the standard agreed to in the [contract.]" **Id.**; **see also** 73 P.S. § 201-2(4)(xvi) (stating that, within the context of the UTPCPL, an actor engages in unfair and deceptive acts or practices when the actor makes "repairs, improvements[,] or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing"). In sum, the trial court in the underlying action found that Wilton intentionally participated in a charade to mislead Brandt by "purposely conceal[ing]" his identify as the subcontractor responsible for installing the metal roof. The trial court further found that Wilton's construction of the roof amounted to inferior work product, *i.e.*, faulty workmanship. The trial court held that, as a result of Wilton's faulty workmanship and intentionally deceptive acts, Brandt suffered actual damages in the amount of $74,216.05. Specifically, the trial court in the underlying action awarded the following damages:

1. $481.00 for the repair of damages caused by a leak in Brandt's kitchen when, during construction, Wilton failed to properly cover the roof area and it rained.
2. $2,000.00 to refund a separate, duplicate payment Brandt made for the installation of seamless gutters and gutter covers when the installation of the same was already included in the original price of the roof contract.

3.    $2,782.00 to replace a ridge vent on the new roof that was improperly installed by Wilton.

4.    $5,000.00 for monies Brandt paid to a consultant who assessed the necessary repairs and replacement of the improperly installed roof and designed a new roof.

5.    $19,483.05 for monies Brandt paid for the demolition of the improperly installed roof, including the replacement of the roof sheathing.

6.    $42,450.00 as a full refund of the monies Brandt paid, pursuant to the installation contract, for the improperly installed roof.

7.    $2,020.00 for the replacement of wood blocking necessary for the installation of a new roof.

*See*, *generally*, Trial Court Opinion, 2/15/19, at 1-14.  Pursuant to Section 201-9.2 of the UTPCPL, the trial court in the underlying action awarded treble damages in the amount of $222,648.15, or three times the actual damages, and, ultimately, awarded attorney's fees in the amount of $195,159.20.

The trial court in the instant matter found that the $481.00 and the $2,020.00 awarded for "damages caused by the leaks due to []Wilton's **faulty workmanship** [was] an occurrence and covered by the policy[.]"  Trial Court Opinion, 2/9/21, at 7.  Regarding the remainder of the damage awards, which the trial court viewed as associated collectively with the "replacement of the roof," the trial court stated that "a non-breach of contract claim seeking [recovery for] damage[s] to property other than the insured's property is covered under a contractor's liability policy."  *Id.* at 8-9 (relying on this Court's disposition in *Indalex*, *supra*).  Applying the principle set forth in *Indalex*, *supra*,[10] the trial court reasoned that Brandt was entitled to complete

_____

[10]  As stated *supra*, this Court explained in *Indalex*, *supra*, that occurrence-based insurance policies exclude faulty workmanship from the

indemnification by Appellant for Wilton's actions because Brandt alleged damage to property as a result of Wilton's faulty workmanship aside from Wilton's work product. Trial Court Opinion, 2/9/21, at 8-9.

To reiterate, the trial court in the underlying action found that Wilton's actions in installing the roof amounted to faulty workmanship. The trial court in the underlying action also determined that Wilton purposefully concealed his identify from Brandt as a subcontractor and delivered a product, *i.e.*, the metal roof, that was inferior to the standard required by the installation contract. These actions by Wilton - the improper installation of the metal roof, the concealment of his identify, and the delivery of an inferior product – constituted intentional acts, faulty workmanship, and deceptive trade conduct. As a result of Wilton's faulty workmanship and intentional unfair trade practices of concealing his identity and delivering an inferior product, Brandt suffered damages in the form of interior damage, duplicate payment for a gutter system, and having to first repair a portion of the faulty roof and then ultimately replace the entire metal roof. These conclusions and determinations reached by the trial court in the underlying action cannot be relitigated in the case *sub judice*. Moreover, as Brandt's claims in the underlying cause of action were premised on Wilton's faulty workmanship and

---

definition of an "accident" that may serve as an "occurrence" that triggers policy coverage. ***Indalex***, 83 A.3d at 422.

intentional acts, he cannot now claim in the case *sub judice* that Wilton's actions were something other than faulty workmanship and intentional acts.

Wilton's faulty workmanship, including his admitted intentional disregard for the manufacturer's recommendations on installation of the metal roof, his intentional deception of Brandt, and his delivery of a product that he knew was inferior, do not constitute "occurrences" under the policy because these acts were by Wilton's own design, rather than by fortuity, and, thus, did not occur by accident. Stated another way, the damages sustained by Brandt regarding the roof installation did not result from an occurrence or accident but, rather, were the result of intentional acts. We cannot concur with the trial court that Brandt's damages were to property other than the completed work itself, *i.e.*, the installation of a metal roof, and that the damages were the result of an occurrence as defined by the policy. Therefore, the trial court erred in granting summary judgment in favor of Brandt.

*Ab initio*, Wilton's actions were intentional acts that resulted in damage to Brandt. As determined by the trial court in the underlying action, Wilton purposely concealed his identity as a subcontractor. Then, during construction of the new roof, Wilton failed to cover the roof. A rainstorm ensued and as a result of this faulty workmanship during construction – the failure to cover the roof - Brandt sustained interior damage ($481.00) in his kitchen that required

repair.[11]    When  installation  of  the  roof  was  completed,  additional  leaks developed and Brandt paid to replace a ridge vent because it was not properly installed.    Again,  Wilton's  faulty  workmanship  led  to  damages  sustained  by Brandt ($2,782.00).  Continuing to experience leaks in the roof, Brandt paid to have the roof assessed and, upon determining that the roof needed to be replaced, to have a new roof designed for his house ($5,000.00).  Brandt paid to have the existing roof removed ($19,483.05) and a new roof installed.[12] The  damages  awarded  in  the  underlying  action  were  the  result  of  Wilton's faulty workmanship and intentional deception.  Therefore, Wilton's installation of  the  metal  roof  is  not  an  occurrence,  as  defined  by  the  policy,  that  triggered coverage  of  the  resulting  damages  because  his  acts  lacked  the  necessary fortuity  and  were  not  accidental.    As  such,  we  find  the  trial  court  erred  in denying Appellant's motion for summary judgment because, as demonstrated

---

[11] We cannot concur with the trial court's analysis that the rain constituted an occurrence, thus triggering coverage for the interior damage.  **See Gambone**, 941 A.2d at 714 (stating that, "damage caused by rainfall that seeps through faulty  home  exterior  work  [(such  as  the  failure  to  cover  the  roof  during construction)] to damage the interior of a home is not a fortuitous event that would trigger coverage").

[12] The trial court in the underlying action found that the replacement roof was of a different style than the roof that was improperly installed by Wilton.  Thus, the trial court limited Brandt's recovery to the cost of the improperly installed roof ($42,450.00).  Trial Court Opinion, 2/15/19, at 13.  The trial court further awarded Brandt $2,000.00 for the duplicate payment of a gutter system that was already included in the original contract price.  **Id.**

by the record, no genuine issue of material fact existed as to whether Appellant was required, pursuant to the policy, to indemnify Wilton.[13]

For these reasons, we vacate the February 9, 2021 order granting summary judgment in favor of Brandt and denying Appellant's motion for summary judgment. We remand the case so the trial court can, in accordance with this decision, enter an order granting summary judgment in favor of Appellant and denying Brandt's counter-motion for summary judgment.

Order vacated. Motion to dismiss or quash appeal denied. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/09/2022

---

[13] In light of our disposition on Appellant's first issue, we do not address its second and third issues. We note, however, that when a case involves a question of contract interpretation, such as in the case *sub judice*, public policy is irrelevant. **See Wagner v. Erie Insur. Co.**, 801 A.2d 1226, 1231 (Pa. Super. 2002), *aff'd*, 847 A.2d 1274 (Pa. 2004).