J-A18035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THE CONTINENTAL INSURANCE COMPANY, AS SUCCESSOR BY MERGER TO BOSTON OLD COLONY INSURANCE COMPANY | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 165 WDA 2024 |
| PENNSYLVANIA ELECTRIC COMPANY, D/B/A PENELEC v. | : : : : : : | |
| HARTFORD ACCIDENT AND INDEMNITY AND FIRST STATE INSURANCE COMPANY, C/O HARTFORD INSURANCE GROUP | : : : : | |

Appeal from the Order Entered November 22, 2022
In the Court of Common Pleas of Erie County Civil Division at No(s):
11792-21

BEFORE:  OLSON, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  October 8, 2024**

Appellant, The Continental Insurance Company, as successor by merger to Boston Old Colony Insurance Company ("Continental"), appeals from the trial court's order denying its motion for judgment on the pleadings and granting Appellee's, Pennsylvania Electric Company d/b/a Penelec ("Penelec"), cross-motion for partial judgment on the pleadings.  After careful review, we affirm.

**Background**

Underlying Lawsuit

This case stems from an underlying lawsuit, filed in July of 2019, by Ronald L. Suman and his wife, Mary Alice Suman, against Penelec and other defendants in the Court of Common Pleas of Allegheny County. The Sumans alleged, *inter alia*, that Mr. Suman worked for Penelec from 1975 to 1996, where he was exposed to, and inhaled, asbestos dust and fibers. **See** Continental's Complaint, 8/17/21, at Exhibit B ("Sumans' Original Complaint") at ¶¶ 127-28, 131.[1] As a result of his exposure, the Sumans claimed that Mr. Suman was diagnosed with mesothelioma in November of 2018. **See id.** at ¶¶ 128-31, 135-36, 146. The Sumans' complaint contained four counts: Count I stated that the Sumans brought the action against Mr. Suman's employers pursuant to **Tooey v. AK Steel Corporation**, 81 A.3d 851 (Pa. 2013),[2] and asserted claims for negligence, breach of warranty, and strict duty and liability imposed under Section 402A of the Restatement (Second) of Torts; Count II asserted a claim for medical monitoring; Count III asserted a claim for loss of consortium on behalf of Mrs. Suman; and Count IV asserted

_____

[1] Penelec provides electric service to nearly 600,000 customers throughout Pennsylvania. **See** Continental's Complaint at ¶ 16; Penelec's Answer, New Matter, and Counterclaim, 10/25/21, at 4 ¶ 16 (unpaginated).

[2] **See Tooey**, 81 A.3d at 855 (concluding that "claims for occupational disease which manifests outside of the 300-week period prescribed by the [Workers' Compensation] Act do not fall within the purview of the Act, and, therefore, … the exclusivity provision of Section 303(a)[, 77 P.S. § 481,] does not apply to preclude an employee from filing a common law claim against an employer"). We discuss **Tooey** further *infra*.

a claim for exemplary and punitive damages. ***See generally id.*** at ¶¶ 127-56.[3]

In June of 2020, Mrs. Suman filed a first amended complaint, which incorporated the allegations set forth in the Sumans' original complaint. Continental's Complaint at Exhibit C ("Sumans' First Amended Complaint") at ¶ 2.[4] Mrs. Suman alleged that Mr. Suman died on March 13, 2020, as a result of the injuries averred in the original complaint. ***See id.*** at ¶¶ 3, 7. As the executrix of his estate, Mrs. Suman said she would continue the action for all damages recoverable as a result of Mr. Suman's injuries as set forth in the original complaint. ***Id.*** at ¶ 6. She also added a wrongful death claim on behalf of herself and the Sumans' three children. ***Id.*** at ¶ 9.

Ultimately, Penelec indicated that it resolved the claims asserted against it by the Suman family through a confidential settlement entered in October of 2021. ***See*** Penelec's Answer, New Matter, and Counterclaim at 20 ¶ 25 (unpaginated); ***see also*** Continental's Reply to New Matter and Answer and New Matter to Counterclaim, 11/16/21, at 11 ¶ 48 (Continental's stating that it "understands … that [Penelec] settled the claim in October 2021 without a trial").

<u>Declaratory Judgment Action</u>

---

[3] As discussed further below, Continental and Penelec dispute whether certain counts of the original complaint were brought by both Mr. and Mrs. Suman.

[4] Confusingly, Mrs. Suman is identified as "Diana Suman" in the first amended complaint, instead of "Mary Alice Suman."

On August 17, 2021, Continental filed the instant declaratory judgment action against Penelec. As a result of the Sumans' lawsuit, Continental averred that Penelec tendered a claim to Continental on or about January 14, 2020, seeking a defense and indemnity under policy no. L3321198 issued by Boston Old Colony Insurance Company to certain General Public Utilities for the period from January 1, 1975 to April 1, 1978 (the "Policy"). *See* Continental's Complaint at ¶¶ 8, 27. Continental alleged that, "[o]n or about February 21, 2020, [Continental] agreed to provide a defense to [Penelec] under the Policy, subject to [Continental's] complete reservation of rights while it continued to investigate" the underlying action. *Id.* at ¶ 28. Continental said that, on or about July 27, 2020, Continental notified Penelec that it had completed its investigation and determined that the claims in the underlying action were barred by the Policy's Employer's Liability Exclusion. *See id.* at ¶ 29. According to Continental, it advised Penelec that it would pay Penelec's reasonable costs incurred in defending the Sumans' action until July 31, 2020, at which time Continental withdrew from the defense. *See id.* at ¶¶ 29-30.

Continental attached a copy of the Policy to its complaint. In relevant part, the Policy provides the following:

DEFINITIONS

When used in this policy (including endorsements forming a part hereof): …

"bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom; …

"occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured; …

I. COVERAGE A-BODILY INJURY LIABILITY
COVERAGE B-PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury

B. property damage

to which the insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments and settlements.

Exclusions

This insurance does not apply: …

(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury, but this exclusion does not apply to liability assumed by the insured under an incidental contract….

*See* Continental's Complaint at Exhibit A ("Policy") at 9, 21 (unpaginated).

Continental explained that Penelec asserts that the claims in the underlying action are covered by the Policy and that Continental is obligated

to defend and indemnify Penelec.  **See** Continental's Complaint at ¶¶ 31-34. Continental therefore sought, *inter alia*, a declaration that (1) it has no obligation, either in whole or in part, to defend, indemnify, or reimburse defense costs resulting from the underlying action because the underlying action is excluded by the Employer's Liability Exclusion contained in the Policy; (2) it has no obligation, either in whole or in part, to defend, indemnify, or reimburse defense costs resulting from the underlying action because Mrs. Suman's and her children's claims for wrongful death, loss of consortium, and medical monitoring are derivative of and dependent upon the uncovered claims of Mr. Suman; (3) the secondary claims asserted by Mrs. Suman and her children for wrongful death, loss of consortium, and medical monitoring do not allege "bodily injury" during the period of the Policy; and (4) because Penelec's coverage claims are otherwise barred, Continental has no obligation, in whole or in part, to defend, indemnify, or reimburse defense costs resulting from the underlying action.  **See id.** at 9, 10, 12, 14.[5]

_____

[5] In Count IV, Continental alleged, among other things, that Penelec's coverage claims are otherwise barred to the extent Penelec failed to comply with any notice provision in the Policy; to the extent that Penelec may be legally liable for bodily injury that was expected or intended from the standpoint of the insured; to the extent that Penelec is seeking insurance recovery for liability arising out of bodily injury, events, acts, occurrences, transactions, losses, or claims which were in progress or were not contingent or unknown at the time of the issuance of the Policy; and to the extent that the Sumans' action resulted from Penelec's violation of a statute, regulation, ordinance, or public policy.  Continental's Complaint at ¶ 64.

On October 25, 2021, Penelec filed an answer, new matter, and counterclaim to Continental's complaint.[6]  In Count I of its counterclaim, Penelec set forth a claim for a declaratory judgment that Continental owes a duty to defend Penelec for the underlying action.  ***See*** Penelec's Answer, New Matter, and Counterclaim at 23 ¶ 41 (unpaginated).  In Count II, Penelec asserted a claim for a declaratory judgment that Continental owes a duty to indemnify Penelec for its settlement of the underlying action, in whole or in part.  ***See id.*** at 25 ¶ 50 (unpaginated).[7]  In Count III, Penelec asserted a claim for breach of contract, averring that "Continental's failure to acknowledge and honor its obligations to Penelec under the Policy, including its failure to defend Penelec and its unreasonable refusal to indemnify Penelec, constitutes a material breach of the insurance contract, which has caused harm to Penelec in an amount in excess of $50,000."  ***Id.*** at 27 ¶ 64 (unpaginated).  Finally, in Count IV, Penelec set forth a claim for bad faith,

_____

[6] At the time Penelec filed its answer, new matter, and counterclaim, it also filed a complaint to join additional defendants, Hartford Accident and Indemnity Company and First State Insurance Company.  The additional defendants have advised this Court that they take no position with respect to the issues on appeal, and they did not file appellate briefs.

[7] According to Penelec, at the time of Continental's disclaimer and withdrawal in late July of 2020, the underlying action "had been designated for final conciliation the week of August 17, 2020, with the trial to occur immediately thereafter."  ***See*** Penelec's Answer, New Matter, and Counterclaim at 19 ¶ 18 (unpaginated).  Penelec claimed that, "[l]eft to fend for itself, Penelec ultimately entered into a reasonable settlement with the claimants for all claims asserted in the [u]nderlying [a]ction, including claims asserted by Mrs. Suman and her children in their own right."  ***Id.*** at 24 ¶ 49 (unpaginated).

alleging that Continental, *inter alia*, failed to promptly and fairly investigate the claim, and did not have a reasonable basis for denying Penelec the benefits afforded to it under the Policy. ***See id.*** 28 ¶ 68, 29 ¶ 69 (unpaginated).

Thereafter, Continental filed a reply to new matter, and answer and new matter to Penelec's counterclaim. Penelec subsequently filed a reply to Continental's new matter.

On January 19, 2022, Continental filed a motion for judgment on the pleadings. It argued, among other things, that "[t]he complaints filed in the [u]nderlying [action] plainly allege that the bodily injury for which Penelec seeks coverage was caused within the scope of Mr. Suman's employment with Penelec[,]" and that the Employer's Liability Exclusion excludes coverage. Continental's Motion for Judgment on Pleadings, 1/19/22, at ¶ 8; ***see also id.*** at ¶ 9. Continental also contended that there is no possibility of coverage for the secondary claims of loss of consortium, medical monitoring, and wrongful death because "these claims are based solely on the uncovered bodily injury caused to Mr. Suman. They are not claims for separate 'bodily injury,' as defined in the Policy." ***Id.*** at ¶ 13; ***see also id.*** at ¶ 12. Continental requested that the trial court "grant its [m]otion for [j]udgment on the [p]leadings, enter a declaration that it has no obligation, either in whole or in part, to defend,

indemnify, or reimburse defense costs in connection with the [u]nderlying [action], and dismiss Penelec's [c]ounterclaim … with prejudice." **Id.** at 3.[8]

On February 18, 2022, in addition to responding to Continental's motion, Penelec filed a cross-motion for partial judgment on the pleadings on Count I of its counterclaim as to the applicability of the Employer's Liability Exclusion to Continental's duty to defend. **See** Penelec's Cross-Motion for Partial Judgment on the Pleadings, 2/18/22, at 1 (unpaginated).[9] In Penelec's cross-motion, it advanced that the Employer's Liability Exclusion "upon which Continental relies to preclude coverage for both Mr. Suman — once an employee of Penelec — and Mrs. Suman — a non-employee of Penelec — cannot reasonably be read to preclude coverage for injuries suffered by non-employees as a matter of law." **Id.** at ¶ 7 (citation omitted). It concluded that, "[s]ince the [Employer's Liability E]xclusion unambiguously does not bar coverage for bodily injuries to non-employees, Continental cannot disclaim its duty to defend Penelec in the [u]nderlying [a]ction on the basis of the exclusion." **Id.** at ¶ 10 (citation omitted).

_____

[8] With respect to Penelec's bad faith claim, Continental argued, "[a]bsent a duty to defend or indemnify, there also is no insurer bad faith." Continental's Memorandum in Support of its Motion for Judgment on the Pleadings, 1/19/22, at 15 (emphasis omitted).

[9] Penelec explained that its "cross-motion is a partial one, related solely to Continental's disclaimer of its duty to defend the [u]nderlying [a]ction on the grounds that the [Employer's Liability E]xclusion precludes coverage." Penelec's Combined Memorandum in Opposition to Continental's Motion for Judgment on the Pleadings and in Support of its Cross-Motion for Partial Judgment on the Pleadings, 2/18/22, at 2 n.2. It said it "reserves its right to seek summary judgment concerning Continental's other defenses…." **Id.**

Following further briefing from the parties, the trial court entered an order and opinion on November 22, 2022, in which it denied Continental's motion for judgment on the pleadings, and granted Penelec's cross-motion for partial judgment on the pleadings. The trial court opined:

The Sumans' original complaint … indicates on its face the Sumans commenced their common law action in negligence against Penelec on the basis of the Pennsylvania Supreme Court decision in **Tooey**…. Under **Tooey**, since Mr. Suman's asbestos disease did not manifest itself until more than 300 weeks after his last occupational exposure, his underlying claims against Penelec did not fall within the purview of the Pennsylvania Worker[s'] Compensation Act (Act). In other words, his disease did not meet the definitions of "injury," "personal injury," and "injury arising in the course of his employment" as used in the … Act. Therefore, the exclusivity [of Section] 303(a) of the Act did not bar Mr. Suman from filing a common law claim against Penelec.

Fair readings of **Tooey** and the Sumans' original complaint, incorporated by reference in the amended complaint, are: 1) the Sumans claimed Mr. Suman developed an asbestos-related occupational disease for which both Mr. Suman and his spouse claimed the need for medical monitoring and damages arising therefrom, and 2) Mr. Suman, given the averments of the timing of the manifestation of his disease, did <u>not</u> sustain "bodily injury … arising out of and in the course of his employment by the insured" within the meanings of: 1) **Tooey**; 2) the "Employer's Liability Exclusion[]"[;] and 3) the definition of "bodily injury" in the [P]olicy. Thus, Mr. Suman had recourse against his employer at common law. Viewing the … [P]olicy['s] language in the light most favorable to Penelec as the insured, Continental owed Penelec[] a duty to defend as to Mr. Suman's claims. "Employer's Liability Exclusion[]" does not eliminate the potential that Mr. Suman's claims fell within the [P]olicy's coverage.

Mrs. Suman's claims are set forth in the original complaint and amended complaint. There is no dispute that neither Mrs. Suman nor the Sumans' children were employees of Penelec. The plain language of "Employer's Liability Exclusion[]" precludes the application of insurance to an employee under certain conditions. By its wording, the exclusion does not apply to non-employees.

- 10 -

Also, by its wording, the exclusion does not concern or pertain to the claim of a spouse or child of an employee. The terms of "Employer's Liability Exclusion[]" do not preclude Mrs. Suman's claims on the basis she was an employee, because she was not.

Alternatively, the language of "Employer's Liability Exclusion[]" precludes the application of insurance "to any obligation of the insured to indemnify another because of damages arising out of *such injury*." However, as previously stated, in Mr. Suman's circumstance, the Sumans did not claim he sustained "bodily injury … arising out of and in the course of his employment by the insured" within the meanings of: 1) **Tooey**; 2) the "Employer's Liability Exclusion[]" in the [P]olicy; or 3) the definition of "bodily injury" in the [P]olicy. Therefore, the terms of "Employer's Liability Exclusion[]" also do not preclude Mrs. Suman's claims because they do not present an "obligation of the insured to indemnify another because of damages arising out of *such injury*." Viewing the [P]olicy language in the light most favorable to the insured, Continental owed the employer, Penelec, a duty to defend as to Mrs. Suman's claims. "Employer's Liability Exclusion[]" does eliminate [*sic*] the potential that Mrs. Suman's claims fell within the [P]olicy's coverage.

Construing together the language of the [P]olicy and the averments of the third-party complaint and amended complaint, Continental had the duty to defend Penelec as to the underlying claims. The insurer is obligated to defend if the factual allegations of the underlying complaint on its face comprehend an injury which is actually or potentially in the scope of the policy. The Sumans' claims actually and/or potentially fall within the scope of the [P]olicy. Their claims do not fall within the [P]olicy's exclusions provisions. Continental failed to satisfactorily establish the applicability of a policy exclusion. Even if only a single claim was potentially covered, the duty to defend was triggered as to all claims.

Trial Court Opinion and Order, 11/22/22, at 21-22 (citations omitted; emphasis in original).

On December 22, 2022, Continental filed a motion requesting that the trial court amend its November 22, 2022 order to permit an interlocutory

- 11 -

appeal and stay the proceedings pending the appeal.[10]  Following briefing from the parties, on January 17, 2023, the trial court granted Continental's motion and amended its order to reflect that it involved a controlling question of law as to which there are substantial grounds for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the matter.  The trial court also stayed further proceedings pending any appeal.  On February 16, 2023, Continental filed a petition for permission to appeal with this Court.  On February 2, 2024, this Court granted the petition, stating that this matter shall proceed as an appeal from the trial court's November 22, 2022 order.  The trial court thereafter ordered Continental to file a Pa.R.A.P. 1925(b) concise statement, and Continental complied.  The trial court then issued a Rule 1925(a) opinion.

**Issues**

On appeal, Continental raises the following questions for our review:

1. The [P]olicy at issue "does not apply … to ***bodily injury to any employee of the insured arising out of and in the course of his employment by the insured***…."  The underlying complaint seeks damages due to an employee's occupational disease arising

---

[10] ***See*** 42 Pa.C.S. § 702(b) ("When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order.  The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order."); Pa.R.A.P. 1311 (addressing interlocutory appeals by permission).

out of and in the course of his employment with the insured. Does the [P]olicy apply?

2. The [P]olicy at issue does not apply "***to any obligation of the insured to indemnify another because of damages arising out of [bodily] injury [to any employee of the insured arising out of and in the course of his employment by the insured]***…." The underlying complaint seeks damages asserted by the former employee's spouse and children arising out of "bodily injury to an[] employee of the insured arising out of and in the course of his employment by the insured…[.]" Does the [P]olicy apply to a family member's claim arising out of the employee's bodily injury, which, in turn, arose out of and in the course of his employment by the insured?

3. The [P]olicy … only applies to bodily injury that occurs ***during the policy period***. The lower court found that the Employer's Liability Exclusion did not apply because the employee's injury manifested more than 300 days [*sic*] after his employment with the insured under the Pennsylvania Worker's Compensation Act. If the trial court was correct in overriding the express words of the policy language by replacing them with the words of an inapplicable state statute, must the injury necessarily fall outside the policy period — which had long lapsed — for the very same reason?

Continental's Brief at 4-5 (emphasis in original; some brackets added).

**Analysis**

At the outset, we recognize that, "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings." Pa.R.Civ.P. 1034(a). It is well-established that:

A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The

- 13 -

court must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Rourke v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa.

Super. 2015) (citation omitted).

This Court has previously explained:

The interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.

Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract. If doubt or ambiguity exists[,] it should be resolved in [the] insured's favor.

An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions. In such actions, the allegations raised in the underlying complaint alone fix the insurer's duty to defend. As this Court has summarized:

The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy.

Pennsylvania recognizes that a duty to defend is broader than the duty to indemnify. Accordingly, even if there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to

- 14 -

defend until it could confine the claim to a recovery excluded from the policy.

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.

Significantly, it is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured.

***Penn-America Ins. Co. v. Peccadillos, Inc.***, 27 A.3d 259, 264-65 (Pa. Super. 2011) (cleaned up; some formatting altered).

## First Issue

In Continental's first issue, it argues that the trial court erred in concluding that Mr. Suman's late-manifesting disease did not arise out of and in the course of his employment with Penelec. ***See*** Continental's Brief at 14. In reaching this conclusion, Continental says that the trial court did not rely on the words in the Policy and their common meaning, but instead on ***Tooey***, which it maintains is inapt to this matter. ***Id.*** Continental explains that our Supreme Court considers exposure to asbestos to cause immediate bodily injury within the meaning of liability insurance policies, and that the term 'bodily injury' also encompasses the progression and the ultimate manifestation of an asbestos-related disease. ***See id.*** at 18 (citing ***J.H. France Refractories Co. v. Allstate Ins. Co.***, 626 A.2d 502, 506 (Pa. 1993)). As such, Continental contends that Mr. Suman's bodily injury began

- 15 -

when he was first exposed to asbestos while working for Penelec in 1975 and continued thereafter. *Id.* Consequently, it insists that the Employer's Liability Exclusion should apply because Mr. Suman's bodily injury arose out of and in the course of his employment with Penelec. *Id.*

"When interpreting an insurance policy, we first look to the terms of the policy. When the language of the policy is clear and unambiguous, we must give effect to that language." *Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418, 420 (Pa. Super. 2013) (citations and quotation marks omitted). "We then compare the terms of the policy to the allegations in the underlying complaint." *Id.* at 421.

As stated *supra*, the Employer's Liability Exclusion sets forth, in relevant part, that the insurance does not apply "to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured…." Policy at 21. Both parties agree that Mr. Suman's bodily injury began when he was first exposed to asbestos and continued until the asbestos-related disease manifested. Continental's Brief at 18 ("As a matter of established insurance law, Mr. Suman's 'bodily injury' began when he was first exposed to asbestos while working for Penelec in 1975, during the Policy period, and continued thereafter."); Penelec's Brief at 8 ("[A] claimant alleging injury arising from asbestos is alleging, for insurance purposes, an injury that begins on the date of first exposure to asbestos and continues all the way until the date that his injury manifests."). The Sumans' original complaint alleges that Mr. Suman was exposed to asbestos while **working** for Penelec, where

- 16 -

he was employed from 1975 to 1996. **See, e.g.**, Sumans' Original Complaint at ¶ 131; **see also id.** at ¶¶ 127-28; Penelec's Brief at 3 n.1 (acknowledging that the original complaint "alleges that Mr. Suman suffered bodily injury as a result of exposure to asbestos dust and fibers **while working for** Penelec between 1975 and 1996") (emphasis added). Accordingly, based on the Policy's plain language and the Sumans' complaint, we determine that Mr. Suman's bodily injury arose out of and in the course of his employment with Penelec.

To the extent the trial court ignored the plain language of the Policy and instead relied on **Tooey** to conclude that Mr. Suman did not sustain injury arising out of and in the course of his employment by the insured, such reliance was in error. In **Tooey**, two former employees were diagnosed with mesothelioma decades after they were exposed to asbestos at work. **Tooey**, 81 A.3d at 856. The former employees filed tort actions against multiple defendants, including their former employers. **Id.** The former employers filed motions for summary judgment, arguing that the former employees' causes of action were barred by the exclusivity provision of Section 303(a) of the Workers' Compensation Act. **Id.**[11] However, the former employees argued that

_____

[11] **See also Tooey**, 81 A.3d at 856 n.2 (stating that, under Section 303(a), "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to
*(Footnote Continued Next Page)*

an occupational disease which first manifests more than 300 weeks after the last occupational exposure to the hazards of the disease does not fall within the definition of injury set forth in Section 301(c)(2)[12]; that the Act, therefore, does not apply to employees seeking compensation for such diseases; and, accordingly, that the exclusivity provision of Section 303(a) does not preclude an employee from seeking recovery for such disease through a common law action against an employer.

*Id.* at 858. Our Supreme Court agreed with the former employees' argument.

*Id.* at 859-60. In addition, given that the Workers' Compensation Act is remedial in nature and intended to benefit the worker, and because the former employees would otherwise be unable to seek compensation for their injuries from their former employers under the Act or at common law, the Court further determined that "the legislature did not intend the Act to apply to claims for disability or death resulting from occupational disease which manifests more than 300 weeks after the last occupational exposure." *Id.* at 865; *see also id.* at 860, 864. As such, it concluded that "the exclusivity

---

damages in any action at law or otherwise on account of any injury or death as defined in [S]ection 301(c)(1) and (2) or occupational disease as defined in [S]ection 108") (quoting 77 P.S. § 481(a)).

[12] *See Tooey*, 81 A.3d at 857-58 (observing that Section 301(c)(2) provides, in pertinent part: "The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include … occupational disease as defined in section 108 of this act [*i.e.*, 77 P.S. § 27.1]: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable") (quoting 77 P.S. § 411(2); emphasis omitted).

provision of Section 303(a) does not preclude [the former employees] from seeking compensation for their injuries via a common law action against [the former e]mployers." *Id.* at 865.

As Continental discerns, the trial court does not "provide any basis for using *Tooey* to ignore the unambiguous text of an insurance policy." Continental's Brief at 15. Further, the holding in *Tooey* was reached after consideration of definitions and provisions set forth in the Workers' Compensation Act. These considerations are not relevant to the present action, as *Tooey* enabled the Sumans to sue Penelec *outside of* the Workers' Compensation Act. We agree with Continental that

> *Tooey* has nothing to do with liability insurance coverage. The [u]nderlying [l]itigation proceeded against Penelec because the *Tooey* holding authorized [the Sumans] to do so. In other words, when the [u]nderlying [l]itigation was tendered to Continental for defense and indemnification under a general liability insurance policy, coverage was governed by the terms of the [P]olicy and the law governing application of insurance, not the Workers' Compensation Act.

*Id.* at 17-18. *See also id.* at 11 ("Penelec's Policy was a general liability policy and did not incorporate the 300-week limitation nor did it adopt the terms of the Workers' Compensation Act."). Based on the foregoing, the trial court erred in relying on *Tooey* to determine that Mr. Suman's bodily injury did not arise out of and in the course of his employment.

## Second Issue

In Continental's second issue, it observes that the underlying litigation includes claims for loss of consortium, medical monitoring, and wrongful death

on behalf of Mrs. Suman and her children. Continental's Brief at 19. It insists that "[n]o possibility of coverage exists for these claims because they are based solely on the uncovered bodily injury experienced by Mr. Suman. They are not claims for separate bodily injury within the meaning of the Policy." **Id.** Moreover, Continental says that the Employer's Liability Exclusions bars indemnification to another because of damages arising out of an employee's injuries. **Id.**

No relief is due on this issue. A review of the Sumans' original complaint reveals that it sets forth the following under Count II pertaining to medical monitoring[13]:

> 149) During all times relevant hereto, each and every defendant knew or should have known of the danger that exposure to its asbestos or asbestos-containing products would cause **plaintiffs** and those similarly situated to them to be exposed for various periods of times to differing levels of asbestos, which was known by defendants to be a cause of numerous cancers of the body and serious diseases.
>
> 150) During all times relevant hereto, each and every defendant knew or should have known that exposure to its asbestos or asbestos-containing products could cause an[] enhanced risk of contracting asbestos-containing diseases, both malignant and non-malignant, in **all plaintiffs** and those similarly situated to them, which would make it necessary for them to undergo medical surveillance in order to monitor for the early detection of or progression of asbestos-containing diseases, both malignant and non-malignant, and permit early medical diagnosis or treatment, if any, of any such disease.
>
> 151) The failure of each and every defendant to provide **plaintiffs** and those similarly situated to them, with any or adequate

---

[13] As mentioned *supra*, the first amended complaint in the underlying action incorporated the Sumans' original complaint.

warnings of the danger from exposure to its asbestos or asbestos-containing products and adequate instructions on how to use its asbestos or asbestos[-]containing products has made it necessary that *plaintiffs* and those similarly situated undergo regular medical surveillance in order to monitor for the early detection of or progression of asbestos-related diseases, both malignant and non-malignant, and permit early medical diagnosis or treatment, if any, of such diseases.

152) The failure of each and every defendant to provide *plaintiffs* and those similarly situated to them, with any or adequate warnings of the danger from exposure to its asbestos or asbestos-containing products and adequate instructions on how to safely use its asbestos or asbestos-containing products rendered it necessary for *plaintiffs* and those similarly situated to undergo medical surveillance. Such conduct by each and every defendant was reckless, wanton, and willful and in conscious disregard to *plaintiffs'* safety and health and those similarly situated.

Sumans' Original Complaint at ¶¶ 149-52 (emphasis added).

In determining whether an insurer has a duty to defend, we reiterate that "the factual allegations of the underlying complaint against the insured are to be taken as true and *liberally* construed in favor of the insured." *Penn-America Ins. Co.*, 27 A.3d at 265 (citations omitted; emphasis added); *see also id.* ("An insurer may not justifiably refuse to defend a claim against its insured unless it is *clear* from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.") (emphasis added; citation omitted). Furthermore, "the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent." *Id.* (citations omitted).

- 21 -

Here, in liberally construing the Sumans' complaint in favor of Penelec, the allegations set forth *supra* can be read as averring that Mrs. Suman seeks medical monitoring due to her own exposure to asbestos. Because the original complaint was filed by Mr. and Mrs. Suman, the term "plaintiffs" can be interpreted as referring to both Mr. ***and*** Mrs. Suman. ***See*** Penelec's Brief at 16 (observing that the Sumans' complaint uses different terms, such as "plaintiffs," "plaintiff-husband," and "plaintiff-wife"; "When the [u]nderlying [c]omplaint is differentiating between Mr. Suman and Mrs. Suman individually, as opposed to Mr. and Mrs. Suman collectively, it does so clearly by using 'plaintiff-husband' or 'plaintiff-wife.' The logical, and only, conclusion is that the usage of 'plaintiffs' without the husband/wife modifier refers to ***both*** Mr. and Mrs. Suman") (emphasis in original).

Further, as discussed above, both parties agree that exposure to asbestos constitutes bodily injury under the Policy. ***See*** Continental's Brief at 18 ("Pennsylvania law considers exposure to asbestos to cause immediate 'bodily injury' within the meaning of liability insurance policies.") (citation omitted); Penelec's Brief at 19 ("[U]nder Pennsylvania law, exposure to asbestos ***is*** 'bodily injury' for purposes of insurance coverage.") (emphasis in original). As such, the complaint can be viewed as stating that Mrs. Suman sustained bodily injury separate and apart from Mr. Suman's bodily injury

through her own asbestos exposure.[14]  Under the Employer's Liability Exclusion, Mrs. Suman's bodily injury would not be excluded, as Mrs. Suman was not an employee of Penelec.  **See** Policy at 21 (stating that the insurance does not apply "to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury…")

---

[14] Continental emphasizes that "Mrs. Suman never worked for Penelec.  Nor does the [original c]omplaint contain any allegations of 'take-home' (or other) exposure to Mrs. Suman that could potentially constitute 'bodily injury' separate and apart from the injuries to Mr. Suman."  Continental's Reply Brief at 13; **see also** Continental's Brief at 24-25 ("These allegations apply to former employees such as Mr. Suman.  However, these allegations could not apply to Mrs. Suman who never worked at Penelec.  Moreover, [the Sumans] do not allege … that *Mrs. Suman* was exposed to asbestos through take-home exposure or otherwise such that she (in addition to Mr. Suman) might need medical monitoring.") (emphasis in original).  This argument, however, overlooks our standard of review, which directs that we are to **liberally** construe the underlying complaint in favor of the insured.  **See Penn-America Ins. Co.**, **supra**.  As Penelec argues,

> Continental may not write these allegations out of the [u]nderlying [c]omplaint, read them narrowly, dismiss them as sporadic, or suggest that Mr. and Mrs. Suman's use of the plural term "plaintiffs" was the result of poor drafting.  In fact, Continental is required to do the exact opposite — it must read the allegations broadly, take them as true, and defend Penelec against **all** claims in the [u]nderlying [c]omplaint even if the allegations as to Mrs. Suman's injuries are groundless, false, or fraudulent.

Penelec's Brief at 17 (emphasis in original; citation and some quotation marks omitted).  Given that the original complaint can be read as stating that Mrs. Suman requires medical monitoring due to her own asbestos exposure, we reject Continental's argument that these allegations do not apply to Mrs. Suman.

(unpaginated).  Thus, the claim for medical monitoring is potentially covered

by the Policy.[15]

_____

[15] Continental asserts in its reply brief that "Penelec never identifies an allegation in the [u]nderlying [c]omplaint that suggests that Mrs. Suman was injured *during the policy period*."  Continental's Reply Brief at 14 (emphasis in original).  However, with respect to the medical monitoring claim, Continental did not specifically contend in its original brief to this Court that — to the extent Mrs. Suman alleged a separate bodily injury — the complaint failed to aver that Mrs. Suman was exposed to asbestos during the policy period, such that any claim for medical monitoring on her behalf was not covered.  Thus, this argument is waived.  **See Commonwealth v. Otero**, 860 A.2d 1052, 1054 (Pa. Super. 2004) ("Issues presented before this [C]ourt for the first time in a reply brief are waived.  … When an appellant uses a reply brief to raise new issues or remedy deficient discussions in an initial brief, the appellate court may suppress the non-complying portions.") (cleaned up).  Nevertheless, even if not waived on this basis, no relief would be due.  The Sumans' complaint can be read to state that Mrs. Suman was exposed to asbestos during the policy period, *i.e.,* from January 1, 1975 to April 1, 1978.  **See** Sumans' Original Complaint at ¶ 149 ("**During all times relevant hereto**, each and every defendant knew or should have known of the danger that exposure to its asbestos or asbestos-containing products would cause **plaintiffs** and those similarly situated to them to be exposed for various periods of time to differing levels of asbestos….") (emphasis added); **id.** at ¶ 150 ("**During all times relevant hereto**, each and every defendant knew or should have known that exposure to its asbestos or asbestos-containing products could cause an[] enhanced risk of contracting asbestos-containing diseases … in all **plaintiffs** and those similarly situated to them, which would make it necessary for them to undergo medical surveillance….") (emphasis added); **see also id.** at ¶ 127 (setting forth Mr. Suman's employment history from 1963 through 1996, and stating that he worked for Penelec from 1975 through 1996).  Consequently, it is not clear from the complaint that any asbestos exposure experienced by Mrs. Suman was outside of the policy period.  **See Penn-America Ins. Co.**, 27 A.3d at 265 ("An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy.") (citation omitted).

Because the claim for medical monitoring is potentially covered by the Policy, Continental had a duty to defend Penelec against all claims in the underlying action. This Court has explained that,

> in order to find a duty to defend, we need not find that every claim asserted in the complaint filed against the insured is within the potential coverage of the policy. Rather we need only determine *if any of the claims* asserted are potentially covered. If any are, the insurer must defend until the suit is narrowed only to claims that are definitely not within that coverage.

*See Penn-America Ins. Co.*, 27 A.3d at 268 (quoting *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1057-58 (Pa. Super. 1992); emphasis added). As a result, the trial court did not err in granting Penelec's cross-motion for partial judgment on the pleadings, which solely argued that Continental may not disclaim its duty to defend Penelec in the underlying action on the basis of the Employer's Liability Exclusion, and by denying Continental's competing motion.

Third Issue

In Continental's third issue, its entire argument is that:

> If this Court should somehow find that the [u]nderlying [c]laimants have not alleged injury arising out of Mr. Suman's employment at Penelec so that the Employer's Liability Exclusion does not apply, the Policy still does not provide coverage. As Penelec has acknowledged, the Policy applies only to "bodily injury" or "property damage," which occurs during the policy period. The "bodily injury" or "property damage" must also be caused by an "occurrence" within the meaning of the Policy. In other words, the coverage grant only provides coverage for bodily injuries that occurred during the policy period. The effective term of the Policy ended in 1978 — *40 years before Mr. Suman was diagnosed with mesothelioma*. If this Court also reads *Tooey* … to hold that an injury does not arise out of employment until it manifests (becomes apparent), then the injury to Mr. Suman, as

- 25 -

well as any injury that could be claimed by his wife, children, and estate, occurred well outside of the applicable policy period. Even if the trial court correctly applied **Tooey** (which Continental disputes), the trial court should have found that Continental owed no duty to defend or indemnify Penelec for this reason alone.

Continental's Brief at 30 (citations omitted; emphasis in original). **See also id.** at 12 ("If the trial court is correct that there was no injury until more than 300 weeks after [Mr. Suman's] employment, the injury falls outside the policy period and is therefore not covered. The same is true with respect to the claims for wrongful death, loss of consortium, and medical monitoring.").

We have already determined that the trial court erred in applying **Tooey** to reach its determination that Mr. Suman's bodily injury did not arise out of and in the course of his employment with Penelec. **See** First Issue, **supra**. Thus, we need not address Continental's third issue further.

## Conclusion

In conclusion, we determine that the trial court erred in relying on **Tooey** to conclude that Mr. Suman's disease did not arise out of and in the course of his employment with Penelec. However, because the Sumans' complaint can be interpreted as alleging that Mrs. Suman required medical monitoring due to her own exposure to asbestos, it was improper for Continental to disclaim its duty to defend Penelec in the underlying action based on the Employer's Liability Exclusion. Accordingly, the trial court correctly denied Continental's motion for judgment on the pleadings and granted Penelec's cross-motion for partial judgment on the pleadings, which

asserted that Continental may not disclaim its duty to defend Penelec in the underlying action on the basis of the Employer's Liability Exclusion.[16, 17]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  10/8/2024

---

[16] To the extent our reasoning differs from that of the trial court, we note that we may affirm on any basis. **See Dockery v. Thomas Jefferson University Hospitals, Inc.**, 253 A.3d 716, 721 (Pa. Super. 2021) ("[T]his Court is not bound by the reasoning of the trial court, and we may affirm the trial court's order on any valid basis.") (internal quotation marks and citation omitted).

[17] We repeat that Penelec requested partial judgment on the pleadings, related solely to Continental's disclaimer of its duty to defend on the basis of the Employer's Liability Exclusion, and specifically reserved its right to seek summary judgment concerning Continental's other defenses. Thus, Continental's other defenses for not defending Penelec in the underlying action remain unresolved, including Count IV of Continental's complaint.